STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-10-450

NEW ENGLAND GUARANTY
INSURANCE COMPANY, INC.,

Plaintiff,

v.

ROBERT A. MASCIADRI,
JOHN HARVEY d/b/a/ COASTAL
RESTORATION SERVICES, INC., and
COASTAL RESTORATION, INC.,
f/k/a COASTAL RESTORATION

Defendants

**ORDER ON DEFENDANT JOHN
HARVEY AND COASTAL
RESTORATION, INC.'S MOTION
TO DISMISS**



STATE OF MAINE
Cumberland, SS. Clerk's Office

FEB 2 3 2011

RECEIVED

Defendants John Harvey and Coastal Restoration, Inc., move to dismiss

this action against them for failure to state a claim.

## BACKGROUND

According to plaintiff New England Guaranty Insurance Company's

complaint, defendant Robert Masciadri purchased property in Leeds, Maine, on

September 28, 2007. (Compl. ¶ 7.) He took out a $132,000.00 loan from Quality

Investments, LLC, to finance the transaction. (Compl. ¶ 8.) The loan was secured

by a mortgage on the property. (Compl. ¶ 8.) Mr. Masciadri insured a building

on the property through a homeowner's insurance policy issued by plaintiff New

England Guaranty. (Compl. ¶ 11.) Quality Investments was listed on the policy

as a mortgagee. (Compl. ¶ 12.)

On or about September 6, 2008, a fire at the property damaged the insured

building. (Compl. ¶ 13.) Mr. Masciadri retained defendant John Harvey of

1

Coastal Restoration Services, Inc., as a public adjuster to assist with the adjustment of the fire loss. (Compl. ¶¶ 14–15.) Mr. Harvey worked with New England Guaranty's representatives to assemble property and repair estimates. (Compl. ¶ 17.) Based on their work, Mr. Masciadri and New England Guaranty agreed on a replacement coast of $68,124.26 for the damage to the property from fire, minus the policy's $500.00 deductible. (Compl. ¶¶ 18–19.)

Disputes arose over and among the multiple payees named on the check for the payment. (Compl. ¶ 21.) Over the course of several months, New England Guaranty had to issue and reissue the check several times at Mr. Harvey's direction. (Compl. ¶ 21.) During this time, Mr. Harvey instructed New England Guaranty that Quality Investments was to be named as a payee on the check because there was an outstanding balance on Mr. Masciadri's mortgage. (Compl. ¶ 22.) New England Guaranty issued its final check to Mr. Harvey on February 4, 2010, in the agreed amount of $67,624.26 made payable solely to Mr. Masciadri. (Compl. ¶ 23.) This was an error. (Compl. ¶ 23.) New England Guaranty mistakenly omitted Quality Investments and other payees from the check. (Compl. ¶ 23.)

Mr. Harvey turned the check over to Mr. Masciadri, despite knowing that Mr. Masciadri was not entitled to the full amount of the check and that Quality Investments should have been listed as a payee. (Compl. ¶ 24.) Likewise, Mr. Masciadri took the check knowing that he was not entitled to retain the full amount tendered. (Compl. ¶ 25.) Mr. Masciadri and Mr. Harvey discussed New England Guaranty's failure to include Quality Investments as a payee, and Mr. Masciadri told Mr. Harvey that he had made an arrangement with New England Guaranty whereby Quality Investments did not need to be listed on the check.

(Compl. ¶¶ 26–27.) This was false. (Compl. ¶ 27.) Mr. Masciadri subsequently deposited or cashed the check and presumably disappeared with the money. (Compl. ¶¶ 25, 30.) New England Guaranty and Quality Investments each made a demand on Mr. Masciadri and Mr. Harvey for the check or the funds. (Compl. ¶¶ 28–29.) The complaint does not indicate when these demands were made. For the purpose of this motion to dismiss, the court will assume a demand was made on Mr. Harvey before he gave the check to Mr. Masciadri. All demands were ignored or denied. (Compl. ¶¶ 28–29.)

A Judgment of Foreclosure and Sale was issued by the Androscoggin County Superior Court in favor of Quality Investments on February 8, 2010. (Compl. ¶ 9.) The insured property was sold at foreclosure on June 15, 2010, presumably leaving a deficiency. (Compl. ¶ 10.) New England Guaranty was forced to pay Quality Investments $67,624.26, because Mr. Masciadri had failed to do so out the funds he received. (Compl. ¶ 30.) In return, New England Guaranty received an Assignment and Release Agreement executed by Quality Investments. (Compl. ¶ 30.)

On September 8, 2010, New England Guaranty filed this complaint against Mr. Masciadri, Mr. Harvey, and Coastal Restoration as Mr. Harvey's employer. Three of the nine counts name Mr. Harvey. Count I asserts that Mr. Harvey had a duty under the insurance policy, the mortgage, and "other sources" to assure that Mr. Masciadri only accepted insurance proceeds due to him. Likewise, Mr. Harvey had a duty to assure that proceeds due to Quality Investments were paid. Counts II and III accuse Mr. Harvey of converting funds due to New England Guaranty and Quality Investments, respectively. Finally, Count IX

3

claims that Coastal Restoration is accountable for Mr. Harvey's actions under the doctrine of respondeat superior.

On October 18, 2010, defendants Mr. Harvey and Coastal Restoration filed a one-page motion to dismiss. The motion argues that the allegations show that as a negotiable instrument the check was the property of Mr. Masciadri at issuance, and that Mr. Harvey merely delivered it. The motion does not contain any citations to supporting law.

## DISCUSSION

"A motion to dismiss tests the legal sufficiency of the complaint." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). The Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *McAfee*, 637 A.2d at 465). "For purposes of a 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *McAfee*, 637 A.2d at 465. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that [s]he might prove in support of [her] claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245–46.

Plaintiff's Count I alleges negligence. To recover for negligence, the plaintiff must show: (1) the defendants owed him a duty; (2) the defendants breached that duty; and (3) the breach proximately caused him injury. *Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 14, 960 A.2d 1188, 1193. While the defendants' motion does contain a vague allusion to Article III of the Uniform Commercial

4

Code, the core of their argument appears to be that Mr. Harvey did not owe a duty to either New England Guaranty or Quality Investments.

The 1986 case of *Northeast Bank of Lewiston & Auburn v. Murphy* dealt with facts similar to those alleged in the present case, and its reasoning is instructive. 521 A.2d 344 (Me. 1986). In *Murphy*, the plaintiff bank had a judgment lien against one Ms. Crochere on any proceeds she might recover in a separate personal injury lawsuit. *Id.* at 346. Daniel Murphy was Ms. Crochere's attorney. *Id.* Ms. Crochere's case ultimately settled, and the defendant's insurance company mailed Murphy a settlement check. *Id.*

Attorney Murphy and the insurance company both knew of the bank lien, but the insurance company negligently failed to protect the bank when issuing the settlement check. *Id.* On realizing its error, the insurance company immediately contacted Murphy, who agreed to use the money to satisfy the lien. *Id.* Murphy then proceeded to disburse the funds to himself, certain physicians and a hospital, and to Ms. Crochere. *Id.* No money was disbursed to the bank, and Ms. Crochere declared bankruptcy shortly thereafter. *Id.*

The bank brought a conversion action against the insurance company and Murphy jointly, and the insurance company brought a cross-claim against Murphy for indemnity. *Id.* After a non-jury trial, the Superior Court found that Murphy and the insurance company were both liable for conversion, and that Murphy was liable to indemnify the insurance company. *Id.*

On appeal, Murphy argued that he should not have to indemnify the insurance company for its act of conversion. *Id.* at 350. The Law Court disagreed, stating that the case was "an appropriate one for indemnity in order 'to do justice within the law so that one guilty of an active or affirmative act of negligence [or

intentional act] will not escape liability, while another whose fault was only technical or passive assumes complete liability.'" *Id.* at 351 (quoting *41 Am. Jur. 2d Indemnity § 20*, at 706 (1968)). Murphy knew that the bank was entitled to a portion of the funds he had received from the insurance company, and had been expressly told that the check was issued in error. *Id.* at 350–51. Furthermore, he had entered into a contract with the insurance company by promising to discharge the lien, and the insurance company reasonably relied on this agreement. *Id.* at 351. Under the circumstances, Murphy was obligated to indemnify the insurance company against the bank. *Id.* (citing *Restatement of Restitution § 97* (1937)).

In the case at bar, the Quality Investments has already been made whole by the insurer. New England Guaranty's claim against Mr. Harvey and Coastal Restoration is, then, partially a claim for contribution or indemnification and partially a claim under the bank's assigned rights. New England Guaranty alleges that Mr. Harvey, like the attorney in *Murphy*, knew that Quality Investments was entitled to a portion of the funds issued to Mr. Masciadri. The court must also infer that New England Guaranty told Mr. Harvey of the error and demanded the erroneous check's return while it was in his possession.

The current action differs from *Murphy* in that there is no allegation that Mr. Harvey promised to ensure that the funds went to the proper party, or that New England Guaranty had reason to trust Mr. Harvey to protect them from their own error. Nonetheless, the facts are close enough to those in *Murphy* that dismissal would be premature. New England Guaranty has alleged a factual scenario in which it may be able to prove that Mr. Harvey's own negligence or

6

recklessness compels him and his employer, Coastal Restoration, to share the insurance company's loss.

Counts II and III allege that Mr. Harvey converted the check and the funds it embodied. The elements of conversion are:

> (1) a showing that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

*Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800. The plaintiff alleges that Mr. Harvey knew or should have known that Mr. Masciadri was not entitled to the full amount of the check made payable to him. The plaintiff had a right to funds and made a demand on Mr. Harvey for the return of the check.

Taking the allegations as true, Mr. Harvey could be liable for conversion if he possessed the check when the plaintiff demanded its return. The plaintiff had a superior right to the funds represented by the check, demanded their return, and Mr. Harvey refused the demand by giving the funds to another who continues to claim them as his own. This would meet the elements of conversion through wrongful interference. Mr. Harvey's employer could be liable for his actions through respondeat superior.

**The entry is:**

The defendants' motion to dismiss is denied.

DATE: _Friday 23, 2011_

Roland A. Cole
Justice, Superior Court

7

01 0000007554 ATTORNEY:HERZER, DAVID

ADDR:415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

| | | | | |
|---|---|---|---|---|
| F | NEW ENGLAND GUARANTY INSURANCE COMPANY I | PL | RTND | 09/08/2010 |

02 0000008588 CONDON, BRIAN D JR

126 MAIN STREET PO BOX 169 WINTHROP ME 04364

| | | | | |
|---|---|---|---|---|
| F | COASTAL RESORATION INC | DEF | RTND | 10/05/2010 |
| F | JOHN HARVEY | DEF | RTND | 10/05/2010 |